1

**GUTRIDE SAFIER LLP**
SETH A. SAFIER (State Bar No. 197427)

2

MARIE MCCRARY (State Bar No. 262670)
100 Pine Street, Suite 1250

3

San Francisco, California 94111
Telephone: (415) 271-6469

4

Facsimile: (415) 449-6469

5

6

Attorneys for Plaintiff

7

UNITED STATES DISTRICT COURT

8

FOR THE NORTHERN DISTRICT OF CALIFORNIA

9

| MARIA ELENA LOPEZ, an individual, on behalf of herself, the general public and those similarly situated, | CASE NO. |
|---|---|
| | UNLIMITED CIVIL CASE |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | JURY TRIAL DEMANDED |
| WATER WIPES (USA), INC., | |
| Defendant. | |

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Plaintiff Maria Elena Lopez, by and through her counsel, bring this Class Action Complaint ("Complaint" or "Class Action Complaint") against Defendant Water Wipes (USA), Inc., on behalf of herself, those similarly situated, and the general public. The following allegations are based upon information and belief, including the investigation of Plaintiff's counsel, unless stated otherwise.

## INTRODUCTION

1.      Defendant deceptively advertises and markets its "Water Wipes" brand wipes as "100% biodegradable." Defendant informs consumers to "dispose of wipes as per local guidelines." Further, it claims on the back of the product packaging that the Water Wipes will "biodegrade[] in 4 weeks." Defendant charges a premium for these wipes, as compared to other wipes that are not marketed as "100% biodegradable." Despite the unqualified biodegradable claim on the label, however, the wipes will not completely break down and return to nature within a reasonably short period of time (let alone 4 weeks) after customary disposal in landfills. Degradation of any material occurs very slowly in landfills, where most garbage is taken. This is because landfills are an anaerobic environment and are designed to keep sunlight, air and moisture out. This helps prevent pollutants from the garbage from entering the air and drinking water, but also slows decomposition. Even materials like paper and food take *decades* to decompose in a landfill.

2.      Reasonable consumers would not pay a premium to obtain the benefits of a "100% biodegradable" wipe if Defendant disclosed that the wipes will not completely break down within a reasonably short period of time after ordinary disposal in a landfill.

3.      This action seeks: (i) to require Defendant to pay restitution and damages to purchasers of the Water Wipes of the price premium paid for the wipes, i.e., the difference between the price consumers paid for the wipes and the price that they would have paid but for Defendant's misrepresentation, in an amount to be proven at trial using econometric or statistical techniques, such as hedonic regression or conjoint analysis; and (ii) an injunction precluding the sale of the wipes within a reasonable time after entry of judgment, unless the wipes' packaging and marketing is modified to remove the "100% biodegradable" and

"biodegrades in 4 weeks" misrepresentations.

**PARTIES**

4.      Plaintiff Maria Elena Lopez ("Plaintiff") is, and at all times alleged in this Class Action Complaint was, and individual and resident of Antioch, CA. She makes her permanent home in California and intends to remain in California.

5.      Defendant Water Wipes (USA), Inc. ("Defendant") is a corporation organized and existing under the laws of the State of North Carolina, having its principal place of business in Portsmouth, New Hampshire.

**JURISDICTION AND VENUE**

6.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(d)(2). The aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs; and Plaintiff and Defendant are citizens of different states.

7.      The injuries, damages and/or harm upon which this action is based, occurred or arose out of activities engaged in by Defendant within, affecting, and emanating from, the State of California. Defendant regularly conducts and/or solicits business in, engages in other persistent courses of conduct in, and/or derive substantial revenue from products provided to persons in the State of California. Defendant has engaged, and continues to engage, in substantial and continuous business practices in the State of California.

8.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in the state of California, including within this District.

9.      In accordance with California Civil Code Section 1780(c), Plaintiff concurrently files herewith a declaration, attached as Exhibit A, establishing that, in or around September 2022, she purchased Water Wipes baby wipes at a Walmart in Antioch, California.

10.      Plaintiff accordingly alleges that jurisdiction and venue are proper in this Court.

**SUBSTANTIVE ALLEGATIONS**

**A.      Defendant Markets and Sells Water Wipes Labeled as "100% Biodegradable"**

11.      Defendant manufacture and market Water Wipes brand baby wipes and adult

sensitive wipes (collectively, the "Water Wipes" or the "Products"). Water Wipes are available for purchase in supermarkets, drug stores, and other retailers, such as Walmart, Target, King Soopers, Safeway, Walgreens, and Kroger. Defendant also sell the Water Wipes on online retailers' websites such as Amazon.com, Walmart.com, Vitacost.com, and BuyBuyBaby.com.

12.     Since on or around March or April 2022, Defendant has prominently claimed on the front of the Water Wipes product packages that they are "100% biodegradable." The claim appears inside a green leaf. For example, as shown in the photo below depicting the front of a 540-count pack of Water Wipes, Defendant claims that the product is "100% biodegradable:"



13.     Additionally, since on or around March or April 2022, Defendant further misled consumers by claiming on the back of the Product package that the Water Wipes are "Made from 100% plant fibres, biodegrades in 4 weeks."

14.     Nowhere on any of the Product packages, at any point during the class period, has Defendant disclosed that the Water Wipes will not completely break down and return to nature within a reasonably short period of time after customary disposal in a garbage can. In particular, the Product packages do not include any disclosures as to (1) the type of non-customary disposal facility or method required for biodegradability, and/or (2) the availability of such disposal facility or method to consumers where the Products are marketed or sold. On the contrary,

Defendant informs consumers to "Please dispose of wipes as per local guidelines."

15. Defendant intends for consumers to understand that the Water Wipes are biodegradable products, i.e., ones that are specially designed to completely break down and return to nature within a reasonably short period of time, after *any* customary disposal. In marketing the Water Wipes, Defendant made only unqualified "100% Biodegradable" claims and has never advised consumers that the wipes may not completely break down if disposed of in the trash. In other words, Defendant sells the Products as ones that are specially designed to break down and return to nature within a reasonably short period of time (i.e., 4 weeks) after ***any*** disposal, and not as a product intended to break down partially or only under certain specified circumstances or environments.

16. In addition to making the misrepresentation on the Product package, Defendant's misrepresentations appear in their advertising for the Water Wipes too. For example, Defendant advertises the Water Wipes on its website where it falsely informs consumers that the Water Wipes are "100% BIODEGRADABLE." An example of Defendant's website advertising is shown below:



Class Action Complaint

**same purity, same quality, now
biodegradable and 100% plant-based.**

∿∿

The purity and quality of WaterWipes might not be news, but the fact
our wipes are now **biodegradable, plastic free** and **compostable**
certainly is.

17.     Defendant has similar advertisements emphasizing that the Product is "100%
Biodegradable" on its social media channels, such as Instagram and Facebook. For example,
Defendant posted the following advertisement on its Facebook account on or about April 28,



2022:

18.     Defendant does not disclose qualify the "100% Biodegradable" claim on their
website or in their social media advertising and Defendant does not disclose that the Water Wipes
will not completely break down and return to nature within a reasonably short period of time
(let alone 4 weeks) after disposal in landfills.

19.     In marketing the Water Wipes to consumers, Defendant know that consumers will
be more likely to purchase the Products if they believe that the wipes are "kinder to the

Class Action Complaint

environment," a greener choice, and that the wipes will completely break down and return to nature within a reasonably short period of time after customary disposal. Thus, Defendant intends for consumers to rely on the representations that the Water Wipes are "100% biodegradable." Defendant further intends for consumers to rely on the omissions that the Water Wipes will not completely break down and return to nature within a reasonably short period of time after disposal in landfills.

20. Further, in marketing the Water Wipes as "100% Biodegradable," Defendant knows that consumers in the United States care about the impact of their purchasing and consuming habits on the environment. As a result, many consumers demand products that are environmentally superior to similar products, in that these superior products cause less harm to the environment. The term "green" is commonly used to describe these products, and the environmental movement that led to them. Factors important in determining that a product is environmentally superior to a similar product include the adverse impact to the environment caused by the manufacturing, use, and disposal of a product.

21. By making the claims that the Water Wipes are "100% Biodegradable" and that they biodegrade within 4 weeks, Defendant positions the Water Wipes as environmentally superior to its competitors' products that do not contain the same representations. Defendant intends for consumers to understand that the Water Wipes are specially designed to be environmentally friendly (i.e., a "green" product) because they are "100 % biodegradable" and have consistently marketed the Products in that manner (both on the labeling and in advertising) since March or April 2022. Defendant intends for consumers to understand that because the Water Wipes are biodegradable, they will not harm the environment when the consumer disposes of them in the customary manner.

22. Because consumers are led to believe the Products are "100% biodegradable," and therefore purchase them because they are a convenient green or environmentally-friendly product, Defendant are able to charge a premium for the them. For example, Water Wipes cost more per wipe (7 cents per wipe) than a comparable package of wet wipes (such as Up & Up Fragrance Free Baby Wipes, which cost only 2 cents per wipe), which are not advertised as "100%

biodegradable" at the retail store Target. If consumers knew that the Water Wipes were not "100% biodegradable" and did not biodegrade within 4 weeks as claimed, the Product would not command a premium price based on that representation, and they would not pay the premium attributable to that representation. Consumers would opt to purchase cheaper products that do not claim to be biodegradable.

**B.     Defendant's Marketing Misleads Consumers Because the Wipes Are Not 100% Biodegradable.**

   **1.     "100% Biodegradable" Means the Product Will "Completely Decompose Into Elements Found in Nature Within a Reasonably Short Period of Time After Disposal" in Landfills**

23.     Reasonable consumers understand the unqualified "100% biodegradable" claim to mean that the entire wipe will completely break down or decompose into elements found in nature within a reasonably short period of time after customary disposal, regardless of where it is disposed. Indeed, Defendant represents elsewhere on the Product packaging that the wipes are "Made from 100% plant fibres, biodegrades in 4 weeks" and "Please dispose of wipes as per local guidelines."

24.     Further, the Federal Trade Commission ("FTC") has defined "biodegradable" in its standards, commonly known as the "Green Guides," which describe what constitutes deceptive and misleading environmental claims. The Green Guides have been independently adopted as part of the Environmental Marketing Claims Act, Cal. Bus. & Prof. Code § 17580, *et seq. See* Cal. Bus. & Prof. Code § 17580.5 (adopting FTC Green Guides).

25.     Section 260.8(d) of the Green Guides specifies that use of the claim "biodegradable" should be substantiated by "competent and reliable scientific evidence that the entire item will completely break down and return to nature (i.e., decompose into elements found in nature) within a reasonably short period of time after ***customary disposal***." 16 C.F.R. § 260.8 (b) (emphasis supplied). The Green Guides advise marketers that to make ***unqualified*** biodegradable claims, they must have scientific evidence that their product will completely decompose within a reasonably short period of time under ***customary*** methods of disposal.[1]

---

[1] *See* https://www.ftc.gov/news-events/press-releases/2009/08/ftc-settlement-bars-sellers-deceptive-biodegradable-claims (last accessed October 28, 2022).

26.    In other words, the Green Guides recognize that consumers understand an unqualified biodegradable claim means that the product will biodegrade when disposed of in landfills. *See, e.g.*

https://www.ftc.gov/system/files/documents/cases/140502americanplasticsdo.pdf (last accessed October 28, 2022) ("For unqualified biodegradability claims, any scientific technical protocol (or combination of protocols) substantiating such claims must assure complete decomposition within one year and replicate, i.e., simulate, the physical conditions found in landfills, where most trash is disposed.").

**2.    Water Wipes Will Not Completely Decompose Into Elements Found in Nature Within a Reasonably Short Period of Time After Customary Disposal**

27.    As the Water Wipes are intended for consumers to use in their baby's bathroom and hygiene routines, the customary method of disposal of the Water Wipes is in the trash, typically wrapped in a soiled diaper, which in turn, is either landfilled or incinerated. Approximately 92 percent of total municipal solid waste in the United States is disposed of either in landfills, incinerators, or recycling facilities. Consumers do not customarily dispose of baby wipes in composting bins for treatment by a municipal composting facility. There are approximately 5,000 municipal composting facilities in the United States, so most consumers would not have access to such a facility. Even in the cities where municipal composting is available, a majority of those facilities are limited to the disposal of yard waste. Thus, for even the very small number of consumers who have access to municipal composting facilities, municipal ordinances forbid the disposal of human waste in such facilities.

28.    For the Water Wipes that are trashed, they will not biodegrade. Materials "biodegrade" when they are broken down by other living organisms (such as fungi, bacteria, or other microbes) into their constituent parts. The process can occur aerobically (with the aid of oxygen) or anaerobically (without oxygen). Substances break down much faster under aerobic conditions, as oxygen helps break the molecules apart, a process called oxidation. Landfills are anaerobic because they are compacted so tightly, and thus do not let much air in. Uncontrolled biodegradation in a landfill can cause ground water pollution, methane gas emissions, and unstable sub-soil conditions. As a result, modern landfills are designed to keep sunlight, air and

moisture out to prevent pollutants from the garbage from entering the air and drinking water and to prevent biodegradation. Even materials like paper and food take ***decades*** to decompose in a landfill.

29.     As such, any biodegradation in a landfill that does take place does so very slowly (over the span of decades). Thus, when disposed of in the trash, Water Wipes will not completely break down and return to nature (i.e., decompose into elements found in nature) within a reasonably short period of time because landfills do not present conditions necessary for biodegradation.

30.     The scientific tests Defendant relied upon to support its biodegradable claims do not replicate, i.e., simulate, the physical conditions of either landfills, where most trash is disposed, or other disposal facilities stated in the representations

31.     Whether the Water Wipes will biodegrade and how long it takes to do so are not matters that consumers can reasonably verify on their own.

**3.     Defendant's Marketing of the Water Wipes Violates Several Provisions of the FTC's Green Guides**

32.     Section 260.3(b) of the Green Guides requires an environmental marketing claim to "specify whether it refers to the product, the product's packaging, a service, or just to a portion of the product, package, or service." 16 C.F.R. § 260.3(b). Defendant's "100% biodegradable" claim on the Products violates this standard of the Green Guides because it fails to specify whether it refers to wipes, the wipes' packaging, or just part of the wipes (i.e., the substrate).

33.     Section 260.3(c) of the Green Guides prohibits an environmental marketing claim from "overstat[ing], directly or by implication, an environmental attribute or benefit. Marketers should not state or imply environmental benefits if the benefits are negligible." 16 C.F.R. § 260.3(c). Defendant's unqualified "100% biodegradable" representation on the Products violates this standard of the Green Guides because it overstates an environmental attribute because the Water Wipes' will not completely break down and return to nature (i.e., decompose into elements found in nature) within a reasonably short period of time (let alone 4 weeks as claimed) after customary disposal via a landfill.

34.     Section 260.8(c) of the Green Guides specifies that for products customarily

disposed of in landfills, unqualified biodegradability claims are deceptive because landfills "do not present conditions in which complete degradation will occur within one year." 16 C.F.R. § 260.8(c). The FTC has confirmed that "it is ***impossible*** for these products to biodegrade within a reasonably short time" when they are disposed of in landfills, incinerators, or recycling facilities.[2] For example, in the matter of *Down to Earth Designs, Inc.,* Docket No. C-4443, the FTC challenged the labeling of baby wipes as "100% biodegradable."[3] The FTC explained that "[l]andfills, incinerators, and recycling facilities do not present conditions for biodegradation or composting within a reasonably short period of time." *Id.* Further, the FTC explained that because consumers of the baby wipes dispose of the majority of used wipes by throwing them away in the trash, which leads to their final disposal in a landfill or incinerator, the products were not properly labeled as "100% biodegradable."

35.     Further, in violation of Green Guide Section 260.2 and Cal. Bus. & Prof. Code § 17580, Defendant has not and cannot substantiate the complained of misrepresentations. *See* 16 C.F.R. § 260.2 and Cal. Bus. & Prof. Code § 17580.

**D.     Defendants Have Misled Consumers To Increase Their Profits.**

36.     Defendant's labeling and marketing campaign has been extremely successful. Water Wipes is a popular brand, and it is sold in grocery stores and big box stores throughout the country. Because of the big potential for sales, Defendant has no incentive to stop selling "biodegradable" products or to change their packaging or add reasonable disclaimers for fear of discouraging sales.

**PLAINTIFF'S EXPERIENCES**

37.     On or about September 2022, Plaintiff purchased multiple packages of Water Wipes from Walmart in Antioch, California. Because Defendant had represented that the Water Wipes were "100% biodegradable" and that they would biodegrade within 4 weeks, Plaintiff is pregnant and she made the decision to purchase the Water Wipes to use when her child is born.

---

[2] https://www.ftc.gov/news-events/press-releases/2009/08/ftc-settlement-bars-sellers-deceptive-biodegradable-claims (last accessed October 28, 2022) (emphasis added).

[3] https://www.ftc.gov/news-events/press-releases/2009/08/ftc-settlement-bars-sellers-deceptive-biodegradable-claims (last accessed October 28, 2022).

She intended to use the Water Wipes and dispose of them along with soiled diapers in the trash. Plaintiff later learned that the Water Wipes will not completely break down after disposal in landfills. Had he known that the wipes were not biodegradable, Plaintiff would not have purchased the Water Wipes, or at minimum, she would not have paid a premium for them.

38.     Plaintiff continues to desire to purchase baby wipes that are biodegradable from Defendant. She regularly visits stores where Water Wipes are sold. Without purchasing and testing the wipes, Plaintiff is unable to determine if they are 100% biodegradable. Plaintiff understands that the design and construction of the wipes may change over time as Defendant responds to pressure from legislators, government agencies, competitors, or environmental organizations. But as long as Defendant continues to use the phrase "100% biodegradable" to describe wipes that do not biodegrade, then when presented with Defendant's packaging, Plaintiff will have no way of determining whether the representation "100% biodegradable" is in fact true. Thus, Plaintiff is likely to be repeatedly presented with false or misleading information when shopping and she is unable to make informed decisions about whether to purchase the wipes. Plaintiff is further likely to be repeatedly misled by Defendant's conduct, unless and until Defendant is compelled to ensure that its wipes labeled as "100% biodegradable" truly are biodegradable.

## CLASS ALLEGATIONS

39.     Plaintiff brings this action against Defendant on behalf of herself and all others similarly situated, as a class action pursuant to Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure. Plaintiff seeks to represent the following groups of similarly situated persons, defined as follows:

> All persons who purchased the Water Wipes with a "100% Biodegradable" claim (the "Class"); and

> All persons who purchased the Water Wipes with a "100% Biodegradable" claim in California (the "Subclass").

40.     The Class and the California Subclass are referred to collectively herein as the "Proposed Classes."

41.     This action has been brought and may properly be maintained as a class action

against Defendant because there is a well-defined community of interest in the litigation and the proposed Class and Subclass are easily ascertainable.

42.    Numerosity: Plaintiff does not know the exact size of the Class or Subclass, but it is estimated that they are each composed of more than 100 persons. The persons in the Class and Subclass are so numerous that the joinder of all such persons is impracticable and the disposition of their claims in a class action rather than in individual actions will benefit the parties and the courts.

43.    Common Questions Predominate: This action involves common questions of law and fact to the potential class and subclasses because each Class and Subclass member's claim derives from the deceptive, unlawful and/or unfair statements and omissions that led consumers to believe that the Water Wipes are "100% biodegradable." The common questions of law and fact predominate over individual questions, as proof of a common or single set of facts will establish the right of each member of the Class and Subclasses to recover. Among the questions of law and fact common to the Class and Subclasses are:

a)    Whether the Water Wipes are "100% biodegradable;"

b)    Where the Water wipes biodegrade within 4 weeks;

c)    Whether Defendant unfairly, unlawfully and/or deceptively failed to inform Class members that the Water Wipes will not completely break down into elements found in nature within a reasonably short period of time (let alone 4 weeks) after customary disposal in landfills;

d)    Whether Defendant's advertising and marketing regarding the Water Wipes with the unqualified "100% Biodegradable" representation was likely to deceive Class members or was unfair;

e)    Whether Defendant engaged in the alleged conduct knowingly, recklessly, or negligently;

f)    The amount of the premium lost by Class members as a result of such wrongdoing;

g)    Whether Class members are entitled to injunctive and other equitable relief

1    and, if so, what is the nature of such relief; and

2            h)    Whether Class members are entitled to payment of actual, incidental,

3    consequential, exemplary and/or statutory damages plus interest thereon, and if so, what is the

4    nature of such relief.

5        44.    Typicality: Plaintiff's claims are typical of the Classes because she purchased

6    Water Wipes in the last year, in reliance on Defendant's misrepresentations and omissions that

7    the Water Wipes are "100% biodegradable." Thus, Plaintiff and Class members sustained the

8    same injuries and damages arising out of Defendant's conduct in violation of the law. The injuries

9    and damages of each Class member were caused directly by Defendant's wrongful conduct in

10   violation of law as alleged.

11       45.    Adequacy: Plaintiff will fairly and adequately protect the interests of all Class

12   members because it is in her best interests to prosecute the claims alleged herein to obtain full

13   compensation due to her for the unfair and illegal conduct of which she complains. Plaintiff also

14   has no interests that are in conflict with or antagonistic to the interests of Class members. Plaintiff

15   has retained highly competent and experienced class action attorneys to represent her interests

16   and the interests of the Classes. By prevailing on her own claims, Plaintiff will establish

17   Defendant's liability to all Class and Subclass members. Plaintiff and her counsel have the

18   necessary financial resources to adequately and vigorously litigate this class action, and Plaintiff

19   and counsel are aware of their fiduciary responsibilities to the Class members and are determined

20   to diligently discharge those duties by vigorously seeking the maximum possible recovery for

21   Class members.

22       46.    Superiority: There is no plain, speedy, or adequate remedy other than by

23   maintenance of this class action. The prosecution of individual remedies by members of the Class

24   will tend to establish inconsistent standards of conduct for Defendant and result in the impairment

25   of Class and Subclass members' rights and the disposition of their interests through actions to

26   which they were not parties. Class action treatment will permit a large number of similarly

27   situated persons to prosecute their common claims in a single forum simultaneously, efficiently,

28   and without the unnecessary duplication of effort and expense that numerous individual actions

would engender. Furthermore, as the damages suffered by each individual member of the Classes may be relatively small, the expenses and burden of individual litigation would make it difficult or impossible for individual members of the Classes to redress the wrongs done to them, while an important public interest will be served by addressing the matter as a class action.

47.     Nexus to California. The State of California has a special interest in regulating the affairs of corporations that do business here. More Water Wipes are purchased in California than in any other state. Accordingly, there is a substantial nexus between Defendant's unlawful behavior and California such that the California courts should take cognizance of this action on behalf of a Class of individuals who reside anywhere in the United States.

48.     Plaintiff is unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

## CAUSES OF ACTION

49.     Plaintiff does not plead, and hereby disclaims, any causes of action under any regulations promulgated by the FTC. Plaintiff relies on these regulations only to the extent such regulations have been separately enacted as state law or regulations or provide a predicate basis of liability under the state and common laws cited in the following causes of action.

## PLAINTIFF'S FIRST CAUSE OF ACTION
### (Fraud, Deceit and/or Misrepresentation)
### On Behalf of Herself and the Class

50.     Plaintiff realleges and incorporates by reference the paragraphs of this Class Action Complaint as if set forth herein.

51.     In or around September 2022, Defendant fraudulently and deceptively led Plaintiff to believe that Water Wipes were "100% biodegradable" and that they would completely break down into elements found in nature within a reasonably short period of time (i.e., 4 weeks) after disposal in landfills. In or around September 2022, Defendant also failed to inform Plaintiff that the Water Wipes do not completely break down into elements found in nature within a reasonably short period of time (let alone 4 weeks) after disposal in landfills.

52.     These misrepresentations and omissions were material at the time they were made. They concerned material facts that were essential to the analysis undertaken by Plaintiff as to

whether to purchase the Water Wipes.

53.     Defendant made identical misrepresentations and omissions to members of the Class regarding the Water Wipes.

54.     Plaintiff and those similarly situated relied to their detriment on Defendant's fraudulent misrepresentations and omissions. Had Plaintiff and those similarly situated been adequately informed and not intentionally deceived by Defendant, they would have acted differently by, without limitation, not purchasing (or paying less for) the Water Wipes.

55.     Defendant had a duty to inform Class members at the time of their purchase that the Water Wipes will not completely break down into elements found in nature within a reasonably short period of time (let alone 4 weeks) after disposal in landfills. Defendant omitted to provide this information to Class members. Class members relied to their detriment on Defendant's omissions. These omissions were material to the decisions of the Class members to purchase the Water Wipes. In making these omissions, Defendant breached its duty to Class members. Defendant also gained financially from, and as a result of, its breach.

56.     By and through such fraud, deceit, misrepresentations and/or omissions, Defendant intended to induce Plaintiff and those similarly situated to alter their position to their detriment. Specifically, Defendant fraudulently and deceptively induced Plaintiff and those similarly situated to, without limitation, to pay a premium to purchase the Water Wipes.

57.     As a direct and proximate result of Defendant's misrepresentations and omissions, Plaintiff and those similarly situated have suffered damages. In particular, Plaintiff seeks to recover on behalf of herself and those similarly situated the price premium paid for the Water Wipes, i.e., the difference between the price consumers paid for the Water Wipes and the price that they would have paid but for Defendant's misrepresentation. This premium can be determined by using econometric or statistical techniques such as hedonic regression or conjoint analysis.

58.     Defendant's conduct as described herein was willful and malicious and was designed to maximize Defendant's profits even though Defendant knew that it would cause loss and harm to Plaintiff and those similarly situated.

**PLAINTIFF'S SECOND CAUSE OF ACTION**
**(Negligent Misrepresentation)**
**On Behalf of Herself and the Class**

59.     Plaintiff realleges and incorporates by reference the paragraphs of this Class Action Complaint as if set forth herein.

60.     In or around September 2022, Defendant fraudulently and deceptively made unqualified "100% Biodegradable" claims on the Product packages and led Plaintiff to believe that the Water Wipes were 100% biodegradable and that they would completely break down into elements found in nature within a reasonably short period of time (i.e., 4 weeks) after disposal.

61.     These representations were material at the time they were made. They concerned material facts that were essential to the analysis undertaken by Plaintiff as to whether to purchase the Water Wipes.

62.     Defendant made identical misrepresentations and omissions to all members of the Class regarding the Water Wipes.

63.     Defendant should have known the representations to be false and had no reasonable grounds for believing them to be true when they were made.

64.     By and through such negligent misrepresentations, Defendant intended to induce Plaintiff and those similarly situated to alter their position to their detriment. Specifically, Defendant negligently induced Plaintiff and those similarly situated to, without limitation, to purchase the Water Wipes.

65.     Plaintiff and those similarly situated relied to their detriment on Defendant's negligent misrepresentations. Had Plaintiff and those similarly situated been adequately informed and not intentionally deceived by Defendant, they would have acted differently by, without limitation, not purchasing (or paying less for) the Water Wipes.

66.     Plaintiff and those similarly situated have suffered damages. In particular, Plaintiff

seeks to recover on behalf of herself and those similarly situated the price premium paid for the Water Wipes, i.e., the difference between the price consumers paid for the Water Wipes and the price that they would have paid but for Defendant's misrepresentation. This premium can be determined by using econometric or statistical techniques such as hedonic regression or conjoint analysis.

### PLAINTIFF'S THIRD CAUSE OF ACTION
**(Unjust Enrichment)**
**On Behalf of Herself and the Class**

67.     Plaintiff realleges and incorporates the paragraphs of this Class Action Complaint as if set forth herein.

68.     Plaintiff and members of the Class conferred a benefit on the Defendant by purchasing the Products.

69.     Defendant has been unjustly enriched in retaining the revenues from Plaintiff's and Class Members' purchases of the Products, which retention is unjust and inequitable, because Defendant falsely represented that the Products are "100% biodegradable" and degrade within 4 weeks when, in fact, the Products do not and cannot completely break down into elements found in nature within a reasonably short period of time (let alone 4 weeks) after customary disposal. This harmed Plaintiff and members of the Class because they paid a price premium as a result.

70.     Because Defendant's retention of the non-gratuitous benefit conferred on them by Plaintiff and Class members is unjust and inequitable, Defendant must pay restitution to Plaintiff and the Class members for its unjust enrichment, as ordered by the Court. Plaintiff and those similarly situated have no adequate remedy at law to obtain this relief.

71.      Plaintiff, therefore, seeks an order requiring Defendant to make restitution her and other members of the Class.

### PLAINTIFF'S FOURTH CAUSE OF ACTION
**(Violation of the Consumers Legal Remedies Act, California Civil Code § 1750, *et seq.*)**
**On Behalf of Herself and the California Subclass**

72.     Plaintiff realleges and incorporates the paragraphs of this Class Action Complaint as if set forth herein.

73.     This cause of action is brought pursuant to the California Consumers Legal

Remedies Act, California Civil Code § 1750, *et seq*. ("CLRA").

74.     Defendant's actions, representations and conduct have violated, and continue to violate the CLRA, because they extend to transactions that are intended to result, or which have resulted, in the sale or lease of goods or services to consumers.

75.     Plaintiff and other Subclass members are "consumers" as that term is defined by the CLRA in California Civil Code § 1761(d).

76.     The Water Wipes that Plaintiff (and other similarly situated Subclass members) purchased from Defendant were "goods" within the meaning of California Civil Code § 1761(a).

77.     By engaging in the actions, representations and conduct set forth in this Class Action Complaint, Defendant has violated, and continues to violate, § 1770(a)(2), § 1770(a)(5), § 1770(a)(7), § 1770(a)(8), and § 1770(a)(9) of the CLRA. In violation of California Civil Code §1770(a)(2), Defendant's acts and practices constitute improper representations regarding the source, sponsorship, approval, or certification of the goods it sold. In violation of California Civil Code §1770(a)(5), Defendant's acts and practices constitute improper representations that the goods it sells have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities, which they do not have. In violation of California Civil Code §1770(a)(7), Defendant's acts and practices constitute improper representations that the goods it sells are of a particular standard, quality, or grade, when they are of another. In violation of California Civil Code §1770(a)(8), Defendant has disparaged the goods, services, or business of another by false or misleading representation of fact. In violation of California Civil Code §1770(a)(9), Defendant has advertised goods or services with intent not to sell them as advertised. Specifically, in violation of sections 1770 (a)(2), (a)(5), (a)(7) and (a)(9), Defendant's acts and practices led consumers to falsely believe that the Water Wipes were "100% biodegradable," biodegrade within 4 weeks, and that they would completely break down into elements found in nature within a reasonably short period of time (i.e., 4 weeks) after customary disposal. In violation of section 1770(a)(8), Defendant falsely or deceptively marketed and advertised that, unlike products not specifically denominated as "100% biodegradable," the Water Wipes will completely break down into elements found in nature within a reasonably short period of time (i.e., 4 weeks) after disposal, when in fact, the

wipes do not biodegrade after ordinary disposal.

78.     Plaintiff requests that this Court enjoin Defendant from continuing to employ the unlawful methods, acts and practices alleged herein pursuant to California Civil Code § 1780(a)(2). If Defendant is not restrained from engaging in these types of practices in the future, Plaintiff and the other members of the California Subclass will continue to suffer harm.

79.     In May of 2022, Plaintiff provided Defendant with notice and demand that Defendant correct, repair, replace or otherwise rectify the unlawful, unfair, false and/or deceptive practices complained of herein. Despite receiving the aforementioned notice and demand, Defendant failed to do so in that, among other things, it failed to identify similarly situated customers, notify them of their right to correction, repair, replacement or other remedy, and/or to provide that remedy. Accordingly, Plaintiff seeks, pursuant to California Civil Code § 1780(a)(3), on behalf of herself and those similarly situated class members, compensatory damages, punitive damages and restitution of any ill-gotten gains due to Defendant's acts and practices.

80.     Plaintiff also requests that this Court award her costs and reasonable attorneys' fees pursuant to California Civil Code § 1780(d).

**PLAINTIFF'S FIFTH CAUSE OF ACTION**
**(False Advertising, Business and Professions Code § 17500, *et seq.* ("FAL"))**
**On Behalf of Herself and the California Subclass**

81.     Plaintiff realleges and incorporates by reference the paragraphs of this Class Action Complaint as if set forth herein.

82.     Beginning at an exact date unknown to Plaintiff, but within one year preceding the filing of the Class Action Complaint, Defendant made untrue, false, deceptive and/or misleading statements in connection with the advertising and marketing of the Water Wipes.

83.     Defendant made representations and statements (by omission and commission) that led reasonable consumers to believe that they were purchasing products that was "100% biodegradable," would biodegrade within 4 weeks, and would break down into elements found in nature within a reasonably short period of time after customary disposal. Defendant deceptively failed to inform Plaintiff, and those similarly situated, that Water Wipes do not break down into

elements found in nature within a reasonably short period of time after customary disposal.

84.     Plaintiff and those similarly situated relied to their detriment on Defendant's false, misleading and deceptive advertising and marketing practices. Had Plaintiff and those similarly situated been adequately informed and not intentionally deceived by Defendant, they would have acted differently by, without limitation, refraining from purchasing Water Wipes or paying less for them.

85.     Defendant's acts and omissions are likely to deceive the general public.

86.     Defendant engaged in these false, misleading and deceptive advertising and marketing practices to increase its profits. Accordingly, Defendant has engaged in false advertising, as defined and prohibited by section 17500, *et seq.* of the California Business and Professions Code.

87.     The aforementioned practices, which Defendant has used, and continues to use, to its significant financial gain, also constitute unlawful competition and provide an unlawful advantage over Defendant's competitors as well as injury to the general public.

88.     As a direct and proximate result of such actions, Plaintiff and the other members of the California Subclass have suffered, and continue to suffer, injury in fact and have lost money and/or property as a result of such false, deceptive and misleading advertising in an amount which will be proven at trial, but which is in excess of the jurisdictional minimum of this Court. In particular, Plaintiff and those similarly situated paid a price premium for the Water Wipes, i.e., the difference between the price consumers paid for the Water Wipes and the price that they would have paid but for Defendant's misrepresentation. This premium can be determined by using econometric or statistical techniques such as hedonic regression or conjoint analysis.

89.     Plaintiff seeks equitable relief, including restitution, with respect to her FAL claims. Pursuant to Federal Rule of Civil Procedure 8(e)(2), Plaintiff makes the following allegations in this paragraph only hypothetically and as an alternative to any contrary allegations in their other causes of action, in the event that such causes of action will not succeed. Plaintiff and the Subclass may be unable to obtain monetary, declaratory and/or injunctive relief directly under other causes of action and will lack an adequate remedy at law, if the Court requires them

to show classwide reliance and materiality beyond the objective reasonable consumer standard

applied under the FAL, because Plaintiff may not be able to establish each Class member's

individualized understanding of Defendant's misleading representations as described in this

Complaint, but the FAL does not require individualize proof of deception or injury by absent

class members. *See, e.g., Ries v. Ariz. Bevs. USA LLC*, 287 F.R.D. 523, 537 (N.D. Cal. 2012)

("restitutionary relief under the UCL and FAL 'is available without individualized proof of

deception, reliance, and injury.'"). In addition, Plaintiff and the Subclass may be unable to obtain

such relief under other causes of action and will lack an adequate remedy at law, if Plaintiff is

unable to demonstrate the requisite *mens rea* (intent, reckless, and/or negligence), because the

FAL imposes no such *mens rea* requirement and liability exists even if Defendant acted in good

faith.

90.     Plaintiff seeks, on behalf of herself and those similarly situated, a declaration that

the above-described practices constitute false, misleading and deceptive advertising.

91.     Plaintiff seeks, on behalf of herself and those similarly situated, an injunction to

prohibit the sale of the Water Wipes within a reasonable time after entry of judgment, unless

packaging and marketing is modified to remove misrepresentation and to disclose the omitted

facts. Such misconduct by Defendant, unless and until enjoined and restrained by order of this

Court, will continue to cause injury in fact to the general public and the loss of money and

property in that the Defendant will continue to violate the laws of California, unless specifically

ordered to comply with the same. This expectation of future violations will require current and

future consumers to repeatedly and continuously seek legal redress in order to recover monies

paid to Defendant to which it was not entitled. Plaintiff, those similarly situated and/or other

consumers have no other adequate remedy at law to ensure future compliance with the California

Business and Professions Code alleged to have been violated herein.

**PLAINTIFF'S SIXTH CAUSE OF ACTION**
**("Greenwashing" Under the Environmental Marketing Claims Act, Cal. Bus. &**
**Prof. Code § 17580, *et seq.*)**
**On Behalf of Herself and the California Subclass**

92.     Plaintiff realleges and incorporates by reference the paragraphs of this Class

Action Complaint as if set forth herein.

93.     Defendant's representations and omissions complained of herein constitute advertising that Water Wipes are not harmful to, or are beneficial to, the natural environment, through the use of such the phrases "100% Biodegradable" and "biodegrades within 4 weeks" which, among other things, convey that the Products are "environmental choice," "ecologically friendly," "earth friendly," "environmentally friendly," "ecologically sound," "environmentally sound," "environmentally safe," "ecologically safe," "environmentally lite," or "green product."

94.     On information and belief, in violation of Cal. Bus. & Prof. Code §17580(a), Defendant has not maintained in written form in their records information and documentation supporting the validity of the representations.

95.     Further, in violation of Cal. Bus. & Prof. Code §17580.5(a), Defendant's representations and omissions complained of herein constitute untruthful, deceptive, or misleading environmental marketing claims, explicit or implied, including claims referenced in the Green Guides published by the FTC.

96.     Plaintiff seeks, on behalf of herself and those similarly situated, a declaration that the above-described practices are fraudulent and/or unlawful.

97.     Plaintiff seeks, on behalf of herself and those similarly situated, an injunction to prohibit the sale of the Water Wipes within a reasonable time after entry of judgment, unless packaging and marketing is modified to remove the misrepresentations and to disclose the omitted facts. Such misconduct by Defendant, unless and until enjoined and restrained by order of this Court, will continue to cause injury in fact to the general public and the loss of money and property in that Defendant will continue to violate the laws of California, unless specifically ordered to comply with the same. This expectation of future violations will require current and future consumers to repeatedly and continuously seek legal redress in order to recover monies paid to Defendant to which Defendant was not entitled. Plaintiff, those similarly situated and/or other consumers nationwide have no other adequate remedy at law to ensure future compliance with the California Business and Professions Code alleged to have been violated herein.

**PLAINTIFF'S SEVENTH CAUSE OF ACTION**
**(Unfair, Unlawful and Deceptive Trade Practices,**
**Business and Professions Code § 17200, *et seq.*)**
**On Behalf of Plaintiff and the California Subclass**

98.     Plaintiff realleges and incorporates by reference the paragraphs of this Class Action Complaint as if set forth herein.

99.     Within four (4) years preceding the filing of this Class Action Complaint, and at all times mentioned herein, Defendant has engaged, and continues to engage, in unfair, unlawful and deceptive trade practices in California by engaging in the unfair, deceptive and unlawful business practices outlined in this Class Action Complaint. In particular, Defendant has engaged, and continues to engage, in unfair, unlawful and deceptive trade practices by, without limitation, the following:

a.     making an unqualified "100% Biodegradable" claim on the Product package and claiming that the wipes "biodegrade[] in 4 weeks;"

b.     deceptively representing to Plaintiff, and those similarly situated, the Water Wipes were "100% biodegradable" and that they would completely break down into elements found in nature within a reasonably short amount of time (i.e., 4 weeks) after customary disposal;

c.     failing to inform Plaintiff, and those similarly situated, that the Water Wipes' will not completely break down into elements found in nature within a reasonably short amount of time after customary disposal in trash cans;

d.     violating the Federal Trade Commission Green Guides regulations, including, without limitation, 16 C.F.R. sections 260.2, 260.3(b), 260.3(c), 260.8(c), and 260.8(d), as described herein;

e.     violating the Environmental Marketing Claims Act, Cal. Bus. & Prof. Code § 17580, *et seq.*, as described herein.

f.     violating the CLRA as described herein;

g.      violating the FAL as described herein; and

h.      engaging in fraud, deceit, and misrepresentation as described herein.

100.    Plaintiff and those similarly situated relied to their detriment on Defendant's unfair, deceptive and unlawful business practices. Had Plaintiff and those similarly situated been adequately informed and not deceived by Defendant, they would have acted differently by not purchasing (or paying less for) the Water Wipes.

101.    Defendant's acts and omissions are likely to deceive the general public.

102.    Defendant engaged in these unfair practices to increase its profits. Accordingly, Defendant has engaged in unlawful trade practices, as defined and prohibited by section 17200, *et seq.* of the California Business and Professions Code.

103.    The aforementioned practices, which Defendant has used to its significant financial gain, also constitute unlawful competition and provide an unlawful advantage over Defendant's competitors as well as injury to the general public.

104.    As a direct and proximate result of such actions, Plaintiff and the other members of the California Subclass have suffered and continue to suffer injury in fact and have lost money and/or property as a result of such deceptive and/or unlawful trade practices and unfair competition in an amount which will be proven at trial, but which is in excess of the jurisdictional minimum of this Court. In particular, Plaintiff and those similarly situated, paid a price premium for the Water Wipes, i.e., the difference between the price consumers paid for the Water Wipes and the price that they would have paid but for Defendant's misrepresentation. This premium can be determined by using econometric or statistical techniques such as hedonic regression or conjoint analysis.

105.    Plaintiff seeks, on behalf of herself and those similarly situated, equitable relief, including restitution for the premium and/or the full price that she and others paid to Defendant as result of Defendant's conduct. Plaintiff and the Subclass lack an adequate remedy at law to

obtain such relief with respect to their "unfairness" claims in this UCL cause of action, because there is no cause of action at law for "unfair" conduct. Plaintiff and the Class similarly lack an adequate remedy at law to obtain such relief with respect to their "unlawfulness" claims in this UCL cause of action because the Federal laws and regulations referenced herein do not provide a direct cause of action, so Plaintiff and the Subclass must allege those violations as predicate acts under the UCL to obtain relief.

106.    Plaintiff also seeks equitable relief, including restitution, with respect to her UCL unlawfulness claims for violations of the CLRA, FAL and her UCL "fraudulent" claims. Pursuant to Federal Rule of Civil Procedure 8(e)(2), Plaintiff makes the following allegations in this paragraph only hypothetically and as an alternative to any contrary allegations in their other causes of action, in the event that such causes of action do not succeed. Plaintiff and the Subclass may be unable to obtain monetary, declaratory and/or injunctive relief directly under other causes of action and will lack an adequate remedy of law, if the Court requires them to show classwide reliance and materiality beyond the objective reasonable consumer standard applied under the UCL, because Plaintiff may not be able to establish each Subclass member's individualized understanding of Defendant's misleading representations as described in this Complaint, but the UCL does not require individualized proof of deception or injury by absent class members. *See, e.g., Stearns v Ticketmaster*, 655 F.3d 1013, 1020, 1023-25 (distinguishing, for purposes of CLRA claim, among class members for whom website representations may have been materially deficient, but requiring certification of UCL claim for entire class). In addition, Plaintiff and the Subclass may be unable to obtain such relief under other causes of action and will lack an adequate remedy at law, if Plaintiff is unable to demonstrate the requisite *mens rea* (intent, reckless, and/or negligence), because the UCL imposes no such *mens rea* requirement and liability exists even if Defendant acted in good faith.

107.    Plaintiff seeks, on behalf of herself and those similarly situated, a declaration that

the above-described trade practices are fraudulent and/or unlawful.

108.    Plaintiff seeks, on behalf of herself and those similarly situated, an injunction to prohibit the sale of the Water Wipes within a reasonable time after entry of judgment, unless packaging and marketing is modified to remove the misrepresentations and to disclose the omitted facts. Such misconduct by Defendant, unless and until enjoined and restrained by order of this Court, will continue to cause injury in fact to the general public and the loss of money and property in that Defendant will continue to violate the laws of California, unless specifically ordered to comply with the same. This expectation of future violations will require current and future consumers to repeatedly and continuously seek legal redress in order to recover monies paid to Defendant to which it was not entitled. Plaintiff, those similarly situated and/or other consumers have no other adequate remedy at law to ensure future compliance with the California Business and Professions Code alleged to have been violated herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendant and in favor of Plaintiff and the other members of the Classes, on all causes of action, as follows:

1.    Declaring that Defendant's use of the phrases "100% biodegradable" and "biodegrades with [ ] weeks" on the Water Wipes is unlawful and likely to deceive reasonable consumers;

2.    Enjoining Defendant, directly or through any corporation, partnership, subsidiary, division, trade name, or other device, in connection with the manufacturing, labeling, packaging, advertising, promotion, offering for sale, sale, or distribution of any wipe from making the following claims:

a.    biodegradable;

b.    100% biodegradable;

c.    will break down after disposal; or

d.    biodegrades in [ ] weeks

Class Action Complaint

unless the representation(s) is non-misleading, and, at the time the representation is made,

Defendant possesses and relies upon competent and reliable evidence, that, when considered in

light of the entire body of relevant and reliable evidence, is sufficient in quantity and quality

based on standards generally accepted in the relevant fields to substantiate that the representation

is true. For the purposes of this paragraph, "competent and reliable evidence" means tests,

analyses, research, studies, or other evidence based on the expertise of professionals in the

relevant area, that have been conducted and evaluated in an objective manner by qualified

persons, using procedures generally accepted in the profession to yield accurate and reliable

results. Specifically, any tests, analyses, research, studies, or other evidence purporting to

substantiate any of the above representations must at least:

      a.     demonstrate that the product biodegrades in a sufficiently short amount of

time after customary disposal in landfills; and

      b.     substantially replicate, i.e., simulate, the physical conditions found in the

type of disposal facility or method in which the product is claimed, directly or indirectly,

expressly or by implication, to be properly disposed of; or, if no specific environment is

claimed, then in all environments in which the product will likely be disposed of.

      5.     Enjoining Defendant, directly or through any corporation, partnership, subsidiary,

division, or other device, in connection with the manufacturing, labeling, packaging, advertising,

promotion, offering for sale, sale, or distribution of any wipe to not provide to others the means

and instrumentalities with which to make any representation prohibited by the above. For the

purposes of this paragraph, "means and instrumentalities" means any information, including, but

not necessarily limited to, any advertising, labeling, or promotional, sales training, or purported

substantiation materials, for use by trade customers in their marketing of such product or service.

## **JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury.

Dated: October 28, 2022

**GUTRIDE SAFIER LLP**

_____
Seth A. Safier, Esq.
Marie McCrary, Esq.
100 Pine Street, Suite 1250
San Francisco, California 94111

Attorneys for Plaintiff

Class Action Complaint

1

2        I, Maria Elena Lopez, declare:

3        1.      I am a Plaintiff in this action. If called upon to testify, I could and would

4   competently testify to the matters contained herein based upon my personal knowledge.

5        2.      I submit this Declaration pursuant to California Code of Civil Procedure section

6   2215.5 and California Civil Code section 1780(d).

7        3.      I reside in Antioch, California. In or around September 2022, I purchased Water

8   Wipes baby wipes from Walmart in Antioch, California.

9        I declare under penalty of perjury under the laws of California that the foregoing is true

10  and correct.

11       Executed this 27th day of October 2022, in Antioch, California.

12

13                                                   

14

15                                                   Maria Elena Lopez

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION RE CAL. CIV. CODE SECTION 1780(D) JURISDICTION